UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEISHA FALU,

                Plaintiff,

-against-

COUNTY OF ORANGE, STEVEN GROSS, CARL DUBOIS, KENNETH JONES, and KENNETH DECKER, each in their individual capacity,

                Defendants.

No. 16-CV-0448 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Geisha Falu, a female corrections officer employed by the County of Orange, brings this employment discrimination suit against the County of Orange (the "County") and her supervisors, Steven Gross, Carl DuBois, Kenneth Jones, and Kenneth Decker, in their individual capacities (the "Individual Defendants") (collectively, "Defendants"). The lawsuit arises out of the County's decision, between June 2011 and June 2015, not to promote Falu, and other qualified female corrections officers, to the rank of sergeant. Falu alleges violations of her Fourteenth Amendment rights under 42 U.S.C. § 1983. She also claims a discriminatory failure to promote and a hostile work environment.

Defendants now move to dismiss Falu's Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons stated below, Defendants' motion is GRANTED in part, and DENIED in part. The Court dismisses all claims against the County and against individual Defendants DuBois and Decker.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/30/2017

## BACKGROUND

I. **Facts Alleged**[1]

The following facts – which are taken from the Complaint, materials it incorporates (including the eligibility list for rank of corrections sergeant), and matters of which the Court may take judicial notice – are construed in the light most favorable to Plaintiff, as she is the non-moving party. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).[2]

As of the filing of her complaint, Falu had worked as a corrections officer for the County of Orange ("the County") for about fifteen years. (Compl. ¶ 3, ECF No. 29.) Since 2001, Falu – as alleged in the Complaint – "consistently and continually performed all the job duties and responsibilities of her position in a satisfactory manner." (*Id.* ¶ 15.)

Gross was the County's Commissioner of Human Resources. During his employment, Gross was responsible for "establishing eligibility lists" of the officers eligible for promotions, (*Id.* ¶ 16), "approving an employee's temporary assignment to perform the duties of a higher classification within the Sheriff's office," (*id.* ¶ 17), "canvas[ssing] candidates for … promotional opportunities," (*id.* ¶ 27, subsec. b), and "promot[ing] directly from the eligibility list" in accordance with the New York Civil Service Law and the County's rules. (*Id.* ¶ 27, subsec. c.)

---

[1] The Court assumes the truth of the facts alleged in Plaintiff's Complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and considers documents which are either incorporated by reference, or integral to the claims asserted, therein. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] Falu incorporates by reference the eligibility list reflecting the standing and corrections sergeant exam ratings of fifty-nine (59) officers at the Office of the Sheriff. (Compl. ¶¶ 16, 23, 25.) Although Falu did not attach the eligibility list to her Complaint, Defendants have submitted a copy of the list (ECF No. ("Defs.' Mem.") Ex. C), and Falu does not appear to dispute that it is the same as the list upon which she relied. Accordingly, the Court may – and does – rely on it.

DuBois, as the duly elected Sheriff of the County, "is the County's final policy-maker with regard to promotions within his department," and thus "legally responsible for approving all promotions." (*Id*. ¶ 18.)

Jones was the Undersheriff in the Sheriff's Office. (*Id*. ¶ 13.) During his employment, Jones was "responsible for the day-to-day operations of the jail" and reported directly to DuBois. (*Id*.) The Complaint suggests that Jones had a duty to "obtain a certified list of approved candidates for each of the promotional opportunities" available within the Sheriff's Office, (*id*. ¶ 27, subsecs. a, c), and was among those authorized to "make recommendations concerning promotions." (*Id*. ¶ 19.)

Decker was the Corrections Administrator at the jail where Falu worked. During his employment, Decker had been delegated "responsibilities for promotional decisions." (*Id*. ¶ 15.)

Because each of the individual defendants – DuBois, Gross, Jones and Decker – had some, if not the ultimate, discretion to promote officers to the rank of sergeant or change assignment classifications, (*id.* ¶ 17), they "collectively represent the policy and practice of the County within the Sheriff's Office." (*Id*. ¶ 19.)

Beginning in 2011, the individual Defendants took a number of actions that Falu contends were discriminatory. She alleges that women were "intentionally" underrepresented at the corrections officer level, with the disparity greatest at the supervisory ranks. (*Id*. ¶¶ 26-27, 30-32.) More specifically, as of June 2013, women represented just 18.5% (43 of 233) of the corrections officers and only 9.5% (4 of the 44 ranking officers) of the supervisory personnel. (*Id*. ¶ 20.) Since the "opening of the new jail in 2001/02" Kandi Jones is the only woman to have been promoted as a sergeant. (*Id*. ¶ 34, Subsec. a.) She was promoted by Defendant Jones. (*Id*.) Stated

3

differently, men represented 81.5% of the corrections officers and 90.5% of the department's supervisors. (*Id*.)

On June 7, 2011, Falu took a "promotion examination for the rank of sergeant," and scored an 85.[3] (*Id*. ¶¶ 21, 24.) Gross ranked the fifty-nine officers who passed the exam on a promotion eligibility list, (*id*. ¶¶ 22-23), which was set to expire on June 6, 2015. (*Id*. ¶ 25; Defs' Mot. to Dismiss, Ex. C, ECF No. 30.) Falu alleges that Gross did not certify the eligibility list, provide it to the other individual defendants, or canvass candidates for promotions. (*Id*. ¶ 26.) And rather than canvass candidates for promotions themselves, DuBois, Jones, and Decker relied on the eligibility list created by Gross to promote officers to the rank of sergeant. (*Id*. ¶ 27.)

Between 2011 and 2015, Defendants "promoted twenty officers to the rank of sergeant" from the promotion eligibility list – all of them were male. (*Id*.) Moreover, "[D]efendants failed to promote *any* of the ten (10) qualified females from the eligibility list to the rank of sergeant." (*Id*. ¶ 28.) This included Falu, who "remained on the list" and was denied each promotion despite being eligible "under extant Civil Service rules" and "better qualified than at least some of the males promoted." (*Id*. ¶ 29.) Plaintiff further alleges that Gross intentionally sanctioned DuBois' practice and policy to discriminate against female officers, refusing to promote them as sergeants. (*Id*. ¶ 31.)

In addition to bypassing female officers for promotions, Defendants created a hostile work environment in providing preferential treatment to female officers who either engaged in personal relationship with superior officers or were related to male officers. (*Id*. ¶¶ 33-34, 38.) More specifically, Defendants only promoted those female employees "who [were either] related to male officers" or "engaged in personal relationships with their superiors." (*Id*. ¶¶ 34-35.) For example,

---

[3] On the exam report, Falu is standing at 19 of 59. (*See* Sharon Worthy-Spiegl in Supp. ("Worhty-Spiegl Decl."), ECF No. 31.)

Kandi Jones was promoted in 2009 after her affair with Captain Russnak; an existing female employee was passed over for gun safety instructor by Defendant Jones' girlfriend, Sheryl Thomas;[4] Officer DiChiaro was "required to work a preferred position in Classifications" after marrying Lieutenant DiChiaro; Officer Sue Pastor was not terminated after being charged with a DUI, but was "made an Investigator" after becoming engaged to Captain Mele *and* Officer Bernadette Wilson was also promoted to "Investigator" after she married Sergeant Lopez.[5] Additionally, before her promotion, Sue Pastor had "affairs" with Sergeant Potter and Captain Mele, for which she "received preferential treatment and assignments". (*Id*. ¶ 34, subsecs. a-e.) Plaintiff complains this practice "devalue[ed] the qualifications of [P]laintiff and other qualified female officers and subordinat[ed] their qualifications to their willingness … to engage in intimate personal relationships with superior officers." (*Id*. ¶ 38.) And because Plaintiff declined to engage in this *quid pro quo*, she and others "were denied the opportunity to advance or to receive favorable assignments or other benefits of employment." (*Id*. ¶ 37.)

Plaintiff filed the instant case on January 22, 2016. (ECF No. 9.) On May 24, 2016, Plaintiff filed an amended complaint, which is the operative complaint in this action, (ECF No. 29), and is seeking, *inter alia*, back pay, front pay, and compensatory damages. (*Id*., Prayer for Relief, subsecs. c, d.) Defendants' motion to dismiss was fully briefed as of August 24, 2016. (*See generally* Defs.' Mot. to Dismiss, ECF No. 30; Defs.' Mem. in Supp. ("Defs.' Mem."), ECF No. 32; Defs.' Reply, ECF No. 34.)

---

[4] According to the Amended Complaint, this position "was not advertised or first offered to the existing female staff." (Compl. ¶ 34, Subsec. b.)
[5] This position "was not offered to plaintiff or other female corrections officers." (*Id*. ¶ 34, subsec. d.)

## LEGAL STANDARD

### A. Standard of Review

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Falu's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## DISCUSSION

### A. Section 1983

The Fourteenth Amendment provides public employees with the right to be "free from discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting

under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)) (internal quotation marks omitted). A state employee acting in his official capacity is acting "under color of state law." *Id.* Once the color of law requirement is met, a plaintiff's "equal protection claim parallels his [or her] Title VII claim," except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual. *Id.* Thus, for a § 1983 discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim – and that the adverse action was taken by someone acting "under color of state law." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015).

Plaintiff alleges that the County and Individual Defendants engaged in an intentional practice to deprive female officers equal protection under the law. Liberally construed, the Complaint sets forth the following claims: Defendants "intentionally" failed to promote female officers to the rank of sergeant, (Compl. ¶¶ 20, 26-28, 30, 31) and "deliberately" created a hostile work environment for Falu and other female corrections officers "who wished to advance." (*Id.* ¶¶ 33-38.)

Defendants argue, however, that Falu has failed to allege any facts to show that the County "officially" endorsed or promoted a discriminatory policy, (Defs.' Mem. at 21), and has failed to allege the Individual Defendants' personal involvement in the acts (*Id.* at 5-10.)

For the reasons discussed below, this claim is easily dismissed against all Defendants other than Gross and Jones.

1. Municipal Liability

"It is well established that, in order to establish a claim under *Monell*, a plaintiff must allege that the violation of her constitutional rights resulted from a municipal policy, custom, or practice."

7

*Hays v. City of N.Y.*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *7 (S.D.N.Y. Feb. 28, 2017) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion). Here, Falu fails to allege any facts from which the Court could conclude that the County had a policy, custom, or practice that gave rise to the alleged violations of Falu's constitutional rights. She does assert that her treatment stemmed from a "continued use of promotion procedures that have … an adverse effect on female employees," (Compl. ¶ 32; Pl.' Opp'n at 8), but she does not allege anything to support those conclusory assertions other than citing to a list of female employees who were promoted because they allegedly have connections to or personal relationships with male supervisors. Finally, to the extent that Falu alleges a policy or custom towards female officers, she fails to establish a "direct causal link" between that alleged policy and her own injuries during her employment. *Pluma v. City of New York*, No. 13-CV-2017 (LAP), 2015 WL 1623828, at *9 (S.D.N.Y. Mar. 31, 2015) (internal quotation marks omitted).

In the circumstances presented here, Falu had the burden establishing the existence of a municipal policy or custom that caused a deprivation of her constitutional rights, whether implemented by Sheriff DuBois, Commissioner Gross, or otherwise. Instead, Falu's claim hinges on the theory that relying on the questionable eligibility list to bypass female officers for promotions constitutes a municipal custom or policy. *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012) (citing *Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) ("To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." (internal quotation marks omitted));

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) (noting that a plaintiff must offer "proof of ... a [municipal] custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself"), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Indeed, Falu does not identify a single senior male corrections officer who was similarly situated to her who was treated more favorably than she was. Instead she baldly asserts that "she was better qualified than at least some of the males promoted." (Compl. ¶ 29.) Thus, Falu did not carry this burden, inasmuch as she alleged no facts in support of her assertion that the County had established a policy or custom. While the gender disparities among the class of correction's officers and sergrants within the County are troublesome, Falu's conclusory statements regarding DuBois' policy or that Gross relied on the eligibility list in a manner that contravened department policy is not sufficiently probative of the existence of an underlying policy that could be relevant here. Similarly, Falu fails to cite the County rules or New York Civil Services Laws that the Defendants violated in order to promote less qualified men to the rank of sergeant. For these reasons, the Court dismisses the County from this action without prejudice.

2. Individual Liability

The individual Defendants – DuBois, Gross, Jones, and Decker – argue for dismissing any causes of action against them on the grounds that Plaintiff fails to state a claim under § 1983 and fails to allege their personal involvement in any purported constitutional violation. (*See* Defs.' Mem. 6-11; Defs.' Reply Mem. of Law in Supp. of Mot. (Defs.' Reply) 2-7 (ECF No. 34.).) The Court agrees that these claims must be dismissed against Defendants DuBois and Decker.

9

It is a "prerequisite to an award of damages" under Section 1983 that any constitutional violations be tied to the "personal involvement of defendants in the [the] alleged constitutional deprivations." *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "[P]ersonal involvement of a … defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant … failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, … (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6] Falu fails to allege that any Defendant other than DuBois or Gross was personally involved in the gender-based discrimination in any of these ways.

Regarding Defendant Decker, she alleges only that "subordinate personnel" with which Decker would be ostensibly grouped, "who make recommendations concerning promotions collectively represent the policy and practice of the County within the Sheriff's Office" and "deliberately engaged in a course of conduct known to [Falu] which created a coercive and hostile environment for female correction officers who wish to advance." (Compl. ¶ 33.) Without alleging that Defendant Decker was personally involved with this purportedly discriminatory practice, Plaintiff cannot state a claim pursuant to § 1983. *See, e.g.*, *Shands v. Lakeland Cent. Sch.*

---

[6] Although there is some uncertainty with respect to whether, or to what extent, the *Colon* categories remain good law following the Supreme Court's decision in *Iqbal*, *see, e.g.*, *Zappulla v. Fischer*, No. 11-CV-6733 (JMF), 2013 WL 1387033, at *9 (S.D.N.Y. Apr. 5, 2013), the Court need not address that issue in this case. *See Phillip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *4 (S.D.N.Y. Aug. 22, 2014) ("[U]nless or until the Second Circuit or Supreme Court rule otherwise, this [c]ourt agrees with the courts that have held that the *Colon* factors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." (internal quotation marks omitted)).

*Dist.*, No. 15-CV-4260 (KMK), 2017 WL 1194699, at *10 (S.D.N.Y. Mar. 30, 2017) (dismissing § 1983 claim where the plaintiff failed to alleged that the individually named defendants were personally involved in the alleged constitutional violation). Therefore, to the extent Falu is attempting to assert such a claim against Defendant Decker, it is dismissed without prejudice.

Defendants also contend that Plaintiff has not alleged that DuBois can be held liable under a theory of supervisory liability because Falu has not alleged sufficient personal involvement by DuBois. (Defs.' Reply at 3-4.) Looking to the *Colon* factors, Falu argues that "DuBois' policy and practice of bypassing eligible females to reach equally or less-qualified males was intended to exclude females from promotion to the rank of sergeant and was thereby intentionally discriminatory." (Compl. ¶ 31.) The Court agrees with Defendants that Falu's claim regarding DuBois is circular and wholly conclusory. According to the Complaint, the gender discrepancies prove that DuBois' policy is discriminatory and because he is the "final policy maker with regard to promotions" he must be intentionally promoting said discriminatory policy. (*Id.* ¶ 18.) Because a finding of supervisory liability requires that the allegations against that supervisory defendant "satisfy each element of the underlying constitutional tort," *Turkmen*, 789 F.3d at 250, to hold any of the supervisory defendants liable here, Falu must plead that any action taken by DuBois was done so in conscious disregard of a substantial risk to Falu. But Falu has not adequately alleged that DuBois made any decisions with respect to the promotion of male – or female – officers in a manner that satisfies any of the *Colon* factors. Aside from a series of conclusory statements, none of the facts suggest that DuBois either *participated in* the discrimination, *created* a discriminatory policy, or *was grossly negligent* in supervising subordinates who discriminated against Falu or female officers. *See Turkmen*, 789 F.3d at 250 (explaining that a supervisory defendant is liable

"only if, through their own actions, they satisfy each element of the underlying constitutional tort"). Therefore, the Court also dismisses the claims against DuBois without prejudice.

At this stage, Falu alleges sufficient personal involvement as to Defendants Gross and Jones. Drawing all reasonable inferences in favor of Falu – as the Court is required to do – the facts alleging that Gross was responsible for establishing the eligibility list, (Compl. ¶ 16), and violated procedures in doing so (*Id*. ¶ 26, subsecs. a-c), the Court finds it is plausible that Gross, at the very least, either participated directly in the alleged constitutional violation (first *Colon* factor) or failed to remedy the wrong (second *Colon* factor).

Similarly, Falu alleges sufficient personal involvement regarding Jones. *See, e.g.*, *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) ("[A] plaintiff must allege facts indicating that *some* official action has caused the plaintiff to be deprived of his or her constitutional rights.") (emphasis added). First, Jones allegedly promoted Kandi Jones to the rank of sergeant in 2008, presumably because she was having an affair with Captain Russnak. (Compl. ¶ 34, subsec. a). Second, Falu claims that "Jones was instrumental in obtaining a position … for his 'girlfriend' of several years … as a 'gun safety instructor.'" (*Id*. ¶ 35.) While Falu only cites one example where a female employee with a personal connection was promoted for a similar position (i.e., the rank of sergeant), the Court finds it is sufficient to indicate Jones took some official action that caused Falu to be deprived of her constitutional rights. It is reasonable to infer that Jones participated directly in the alleged constitutional violations (first *Colon* factor).

Therefore, as to Gross and Jones, it reasonable to infer at this stage that they were involved in the promotion process with respect to some, if not all, of the challenged promotions. For these reasons, the Court will not dismiss this claim against Defendants Gross and Jones.

## B. Gender Discrimination and Failure to Promote

As noted, Falu's Amended Complaint can be construed as alleging that she suffered discrimination when Defendants failed to promote her. *See, e.g.*, *Stewart v. City of N.Y.*, No. 11-CV-6935, 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) ("Failure to promote ... qualif[ies] as an adverse employment action under Title VII."). In order to establish a prima facie case of discrimination due to a failure to promote, Plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the [P]laintiff's qualifications." *Opoku v. Brega*, No. 15-CV-2213 (KMK), 2016 WL 5720807, at *11 (S.D.N.Y. Sept. 30, 2016) (quoting *Rodriguez v. City of N.Y*, No. 13-CV-6552, 2014 WL 1399415, at *2 (E.D.N.Y. Apr. 10, 2014) (internal quotation marks omitted).[7] With regard to the fourth prong of this test, the Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the Plaintiff that "she was subject to disparate treatment ... [compared to persons] similarly situated ... [to herself]." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotations and citations omitted).

However, for a complaint to survive in an employment discrimination case it "does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*." *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F.Supp. 2d 228, 236 (E.D.N.Y. 2011). This is because, at the pleading stage, the Court does not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims. *See Gonzalez v. Carestream*

---

[7] Falu sufficiently alleges that she was qualified for the position of sergeant – in fact, Falu claims to have been more qualified than several male officers who were promoted or hired instead of her. (Compl. ¶ 29.) With respect to her own qualifications, Falu alleges that "at all relevant time, [she] has consistently and continually performed all job duties and responsibilities of her position in a satisfactory manner." (*Id*. ¶ 15.)

13

*Health, Inc.*, 520 Fed. Appx. 8, 9-10 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace discrimination … need not allege specific facts establishing a prima facie case under *McDonnell Douglas* …"); *Rosario v. City of New York*, No. 11-CV-09008 (PAC) (SN), 2013 WL 782408, at *6 (S.D.N.Y. Jan. 9, 2013), *adopted* by 2013 WL 782581, at *2 (S.D.N.Y. Mar. 1, 2013) ("An 'employment discrimination plaintiff need not plead a prima facie case of discrimination [under *McDonnell Douglas Corp. v. Green*.'" (quoting *Bermudez v. City of New York*, 783 F.Supp. 2d 560, 575 (S.D.N.Y. 2011))). Indeed, "[t]o measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage [would be] inappropriate," because "the prima facie case operates as a flexible evidentiary standard" that "should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 507, 122 S.Ct. 992.

Rather, "[this Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Carestream Health*, 520 Fed. Appx. at 10 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *see also Boykin v. KeyCorp*, 521 F.3d 202, 212-13 (2d Cir.2008). In other words, "the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case. Thus, the standard is simply whether [the] plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim" of discrimination. *Hitchins v. NYC Dept. of Educ.*, No. 11-CV-4180 (RRM)(RML), 2013 WL 1290981, at *3 (E.D.N.Y. Mar. 28, 2013); *see also Swierkiewicz*, 534 U.S. at 508, 122 S.Ct. 992 (finding that on a motion to dismiss, a complaint alleging employment discrimination need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

Here, Defendants contend Falu "has not properly pled that she was not promoted to the rank of corrections sergeants based upon gender discrimination." (Defs.' Mem. at 11.) The Court disagrees.

Plaintiff claims that although she was more qualified than at least some of the males promoted, Defendants decided not to promote her based on her gender.

June 7, 2011, Falu took a promotion examination, and she ranked within the top twenty candidates for a sergeant promotion. As far as the Court is able to deduce the gender of the candidates listed, Falu seems to be one of the top three women on the eligibility list. (*See* Defs.' Notice Mot. to Dismiss, Ex. C). Nevertheless, from 2011 to 2015 Defendants allegedly passed over Falu for a sergeant position, which was instead given to *twenty* other male employees. (Compl. ¶ 25.) "During the life of the [] eligibility list, [D]efendants failed to promote *any* of the ten (10) qualified females from the eligibility list to the rank of sergeant." (*Id.* ¶ 28.) Falu remained on the list, despite being "reachable for promotion under extant Civil Servant rules," or "better qualified than at least some of the males promoted." (*Id.* ¶ 29.)

In the Court's view, based on these allegations, Falu has pleaded with particularity that she was not given the promotions because of her gender. Indeed, based on these allegations, it is plausible that due to her sex, that Falu was treated less favorably than her similarly-situated male counterparts. Thus, all of these allegations are sufficient to give the Defendants fair notice of the Plaintiff's claims and the Defendants' motion to dismiss the gender discrimination claim is denied.

## C. Hostile Work Environment[8]

Falu's final § 1983 claim is that she was subject to a hostile work environment. In order to establish a hostile work environment in violation of Title VII, a plaintiff must demonstrate that the "workplace is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Yu v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 11-CV-3226 (JMF), 2013 WL 3490780, at *7 (S.D.N.Y. July 12, 2013) (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation marks omitted). The plaintiff must also show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). In determining whether a plaintiff has made a threshold showing, "relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Further, the plaintiff "must also subjectively perceive the environment to be abusive," and "must demonstrate that the conduct occurred because of her sex." *Id.*

As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry*, 115 F.3d at 149 (citation and internal quotation marks omitted). Isolated acts, unless very serious, do not meet the threshold of

---

[8] Defendants' arguments regarding preferential treatment and *quid pro quo* discrimination are subsumed into this section, because Plaintiff clarified that "she has not raised allegations of preferential treatment and *quid pro quo* discrimination as separate claims, but alleges that these discriminatory acts created and contributed to a pervasive atmosphere of sexual hostility in the work environment." (*See* Pl.'s Mem. in Opp'n ("Pl.'s Opp'n"), ECF No. 37, at 19 n. 4.)

16

severity or pervasiveness. *Brennan*, 192 F.3d at 318; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "we have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment"); *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002). In analyzing a hostile work environment claim, the Court must "assess the totality of the circumstances." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks and citation omitted).

The Complaint does not allege facts that meet this standard. It does not supply any specific examples as to how Falu's work environment was hostile. Instead, it references five examples where female employees were hired or promoted based on their alleged personal relationship with or connection to male supervisors. (Compl. ¶¶ 33-37). The general, conclusory allegation that "by refusing to engage in such personal relationships as required under this *de facto* policy, female officers such as [Falu] were denied the opportunity to advance or to receive favorable assignments or benefits," does not advance Falu's claim. The acts alleged "lack the pervasiveness, ridicule, or intimidation necessary to create a hostile work environment." *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388 (PAE), 2012 WL 5451189, at *10 (S.D.N.Y. Nov. 8, 2012). Because of these deficiencies, the Complaint falls well short of the standard required for a hostile work environment claim to survive dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part, and DENIED in part. The Court has dismissed Falu's hostile work environment claim. The Clerk of the Court is directed to terminate as parties the County, Carl DuBois, and Kenneth Decker.

Defendant shall file an answer by July 30, 2017. Counsel for all parties are further directed to appear for an initial case management and scheduling conference with the Court pursuant to Fed. R. Civ. P. 16 on **August 3, 2017, at 10:00AM in Courtroom 218** of the Charles L. Brieant, Jr. Courthouse, 300 Quarropas Street, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order in advance of the conference. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 30.

Dated: June 30, 2017
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge